In this case, Joshua Wallace is appealing the District Court's denial of his 2255 motion in which he challenged the ACCA Enhancement of his Felon in Possession case. This was Wallace's first petition, and it was filed within one year of the Supreme Court denying cert in his own case. In the petition, he attacked all four prior convictions that the District Court had used to enhance his sentence, an escape conviction under Texas law and three burglary convictions also under Texas law. In the original petition to support that claim, Wallace cited to the then-recent Supreme Court case in Johnson. Within six months, the Supreme Court then decided Mathis, and within two to three weeks of that Mathis decision, Wallace amended his petition to add the legal authority of Mathis to support the same claim that none of the four prior convictions qualified as ACCA Enhancements. At that time, the government had already conceded that under the new Johnson case, the one escape conviction did not qualify anymore as a basis for an ACCA Enhancement. So the District Court, then approximately five months later, issued an opinion in which it denied Mr. Wallace's petition on the burglary convictions, and it did so in conformance with what this circuit's precedent was at the time, which was under Uribe and Conde Castaneda that Texas burglary was not divisible, and so that the court could look at the underlying conviction documents and find that Mr. Wallace was convicted under an A-1 of the Texas burglary statute, which this court had said was generic burglary. So at that point, several months later, the court en banc issues Herald. Since that point going forward, this appeal has always been that Herald was the law and that under Herald, Texas burglary was not generic burglary as an indivisible statute, and that brings up exactly the issue that this court asked for supplemental briefing on. What is the effect of the recent Supreme Court decision in Quarles, and what is the effect of the recent Supreme Court decision to vacate the Herald en banc opinion in remand for further consideration to this court? First, it's important to set aside what was not at issue in Quarles, and what was not at issue really even in the Herald en banc case in the dissent at least, and that is divisibility. Quarles didn't address divisibility, and it couldn't have addressed divisibility under a Texas statute because we know under Mathis that divisibility is determined by the law of the particular state. Quarles dealt with Michigan, not with Texas, and as I said even in Herald, the argument wasn't so much about divisibility as it was about what is the generic definition of burglary. So in this case, Quarles reserved on exactly the issue that Herald had presented to the Supreme Court, and that is that Texas's burglary statute is still overly broad, and that's because Texas burglary under A3 of the statute, which punishes entering a structure and then committing a crime or attempting to commit a crime, that particular subsection has no mens rea with regard to the underlying crime, or it is a lesser mens rea than the formation of an intent to commit a crime at any time while remaining in the structure. That formulation is important because by my count, at least five or up to seven times the Supreme Court in Quarles set it clearly. Generic burglary includes remaining in a structure when the defendant forms an intent to commit a crime at any time while remaining in that structure. That was the formulation that the Supreme Court now has just given us, and as Herald pointed out in his Supreme Court briefing, Texas goes much further. The A3 section, as I mentioned, requires no intent to commit the underlying crime, which the statute defines as assault or a felony other than theft. It doesn't require that that be done with intent, and it includes assault, which we know under Texas law includes reckless mens rea, but by including other felonies, it also includes felonies such as injury to a child or injury to an elderly individual, which goes all the way down to the commission of an offense with criminal negligence. There are cases under Texas law where the courts have applied the A3 form of burglary in circumstances raising either recklessness with regard to assault or criminal injury to an elderly individual, and those cases are intermediate appellate court cases. They're unpublished cases, but they're still cases issued by courts. You have to win on this argument that 30.02A3 allows for felonies that don't require intent, right? Yes, even with... Yes. If you require an intent to commit a crime sometime during that time period, then I would agree Quarles controls here, but the Texas case that I'm referring to, there's a case out of Corpus Christi from 2005, Trejo, 2018 out of Amarillo, Daniel, 2014 out of Dallas, Sneed, and an injury to an elderly case, Carlock out of Waco in 1999. The assault cases all involved the commission of a burglary in the breaking of a dwelling, breaking of a structure, but the underlying crime of assault was committed recklessly because in those cases the person had busted his way through the door, essentially hurting somebody on the other side when the door came apart or when the door opened and someone was on the other side. So it shows that this can actually happen under Texas law. It's not simply theoretical. At least until last week, the only argument that the government raised against Mr. Wallace's that case has no application to this case at all because the Weiss decision was based on it being a second or successive petition. That invokes 2255H's special jurisdictional rules that require the petitioner to be depending upon a new rule of law made retroactive by the Supreme Court on collateral review. But as I mentioned at the very beginning, this was Wallace's first and so far only petition, not a second or successive petition. So the special jurisdictional rules of 2255H, the special rules dealt with in Weiss have no application. Mathis, on the other hand, outside of that context where the special rules apply, is retroactive. It's retroactive because under the Teague framework of analysis, it's an old rule. It's an old rule in the sense that it was dictated by precedent. And we know that because the Supreme Court itself said it in Mathis that the opinion in Mathis was determined by the 25 years of decisions going all the way back to Taylor in 1990. The best case I have for the Court is one we cited in the briefs. It's an 11th Circuit case called Mays. In that case, the 11th Circuit did exactly this Teague analysis for DeCamp, the predecessor to Mathis, and held that an Alabama burglary no longer would be an adequate ACCA enhancement support exactly because of the application on a retroactive basis of DeCamp, which is essentially the same as Mathis, that is Mays from the 11th Circuit. Now that gets us to two new arguments. For the first time on appeal, the government in supplemental briefing raised two new arguments, timeliness and procedural bar. Neither of those arguments has ever been raised until the supplemental briefing last week in this Court. And one of those arguments, timeliness, was never raised in the District Court at all. There are two reasons why this Court should reject those arguments. One, related to the manner in which they've been asserted, and two, based on the substance. With regard to the manner in which they are asserted, in 2005, this Court said in Bonilla-Munguia that the Court would reject government arguments raised for the first time in supplemental briefing, and particularly stated, we will not consider new arguments first raised by an appellee in supplemental briefing on unrelated issues. That's exactly what happened here. This Court asked us to address the impact of Quarles and Herald, and instead the government raised two completely new arguments, timeliness and procedural bar. And it did so only in these supplemental briefings. But even more important, especially with regard to the timeliness argument, in attempting to respond to that over the past week, I came across the Supreme Court's decision in Wood v. Milliard, which is 566 U.S. 463, from 2012. And the Court there held that it is an abuse of the appellate court's discretion to consider or to address a timeliness argument that the government has waived in the District Court. And that's what happened here. In the District Court, the government stated affirmatively that the petition was timely. And it's true that Wallace thereafter, within the month or two after the government's response, asserted the Mathis claim after the Supreme Court decision came out. So he amended his claim. But from that point until December, there were five months. In those five months, the government never retracted its affirmative assertion of timeliness. It never raised a timeliness issue. It never asserted that this amendment was not an amendment that related back to the original petition. So the District Court addressed the issues that had been raised under Mathis in its opinion. This was an argument that the government had waived, and it never brought back up. But even if the Court were to consider this argument not waived, perhaps because of the amendment, at least two other circuits have said, under Wood v. Milliard, that the exceptional circumstances required to address a forfeited timeliness argument should not be addressed absent extraordinary circumstances and when the District Court has spent time and effort and invested resources in actually deciding the issue. And these two circuits have done it in exactly this context of Johnson claims where there were subsequent claims based on Mathis or another similar type of issue. And one of those cases is cited in our briefs. It's Cradler from the Sixth Circuit, 891 F. 3rd, 659, from the Sixth Circuit in 2018. The other is Areola-Castillo, United States v. Areola-Castillo out of the Seventh Circuit, also in 2018, 889 F. 3rd, 378. But if this Court were to address the timeliness argument, the government's argument should still be rejected. And that is because what Wallace did, pro se, was an amendment to his claim that did relate back. We agree that Mayo v. Felix is the proper Supreme Court framework. Under that framework, an amendment relates back if it arises from the same conduct, transaction, or occurrence. Or another way the Supreme Court stated it is if the claims arise out of a common core of fact. And in this case, Wallace added a Mathis legal argument, but he attacked the same act of sentence. He did it on the basis of the same cited burglary convictions that he had brought up in his original petition. He was going back to the same sentencing hearing that the district court had held at which it had examined the same conviction documents that were at issue in the original petition. So there were no distinctions of fact. There was simply another added legal authority to support the argument that he had already made. This is very different from Mayo v. Felix, which involved, on the one hand, an original petition addressing statements of third parties, and then an effort to amend to attack statements made by the defendant himself. So in other words, statements involving different times and different places. Counsel, getting back to the merits for a second, so we either need to determine or Harold needs to determine, someone needs to determine whether there's an intent requirement in the statute, right? But does someone also need to determine whether Uribe, whether the divisibility determination in that case still stands? It was abrogated in Harold, but if Harold is not there anymore, does it stand? Do you have to win on both issues? The divisibility ruling in Harold should stand, one, because Quarles didn't actually do anything about divisibility. In other words, Harold was reversed precisely because of Quarles holding about generic burglary, but it said nothing about divisibility. And the Harold majority... The whole case is GVR, isn't it? It is. So it doesn't exist anymore right now, does it? That is true. So what do we do about the divisibility point? On the divisibility point, the Court should reaffirm what it said in Harold on that point. I admit that if the Court comes out in a different place in terms of what is generic burglary, that Mr. Wallace loses.  But to task on that point, as much as on the generic burglary definition, it had it right because Texas law is crystal clear that for jury unanimity purposes, that the three different formats under the statute for commission of burglary can be submitted to the jury. The jury doesn't have to be unanimous on which way it is done. And the Carlock decision that I brought up to you, I think, is a good example of that as well, where the state had charged many different forms of burglary in the way it that were committed under A3. And the Court held that any of them would sustain that conviction. Okay. So your position is you do have to win on both points, divisibility and intent, but that you think divisibility is an easy point, basically, and that the Harold majority is constructive in that area, right? Yes, Your Honor. Okay. And that nothing in quarrels called that into doubt at all. On the timeliness issue, just to wrap that up, there is another case out of the Tenth Circuit where the Tenth Circuit has done exactly what I've argued to this Court, which is holding that a Mathis argument amended and related back to an original petition challenging a Johnson issue. That case is U.S. v. Trent at 884 F. 3rd 985. This is only a couple of months after the original thing was filed, right? Yes, Your Honor. It was right after Mathis came out. Exactly. It was in two to three weeks after Mathis came out. On the procedural bar issue, if the Court were inclined to address that, I did address that in my original briefs. The main point there being that Mathis is an intervening decision, as this Court has already held in numerous other contexts, so a procedural bar does not apply. It's lifted when there's been an intervening decision. But more importantly, the Dallas County burglary conviction was not actually raised and rejected in this Court's prior Wallace opinion. It was raised by Wallace, but this Court never reached it. So even the asserted procedural bar doesn't cover the burglary conviction. That's exactly what the District Court dealt with in its opinion below. Counsel, when you come back up, can you address what your situation is with your client, his imprisonment? It seems that if we just keep waiting in this case that he . . . I thought in the blue brief his range would have been 63 to 78 months, if you win, and that would have been in 2017 or 18. So if you could either address that when you get back about what waiting does, what it doesn't do, where we are on your client's incarceration and sentence based on your positions. Thank you. May it please the Court, Anna Coluri on behalf of the United States. I can get into the timeliness here and the time frame of this case and the procedural posture, but I'd like to say first that the District Court properly denied Mr. Wallace's and as we stand here today, Mr. Wallace has three qualifying predicates. He has three convictions for burglaries, which qualify under 30.A2A1 and under Silva-Constant-Uribe. These all qualify as violent felonies, which support the ACCA enhancement. Everything was correct when he was sentenced. Everything was correct when the District Court denied the 2255, and as we stand here today, it is the state of the law. The effect of the Supreme Court's orders in Quarles and Herald nullified this Court's en banc opinion in Herald. And until we have a new opinion, the current state of the law is that these are qualifying predicates. Perhaps, but they were also abrogated, so it's an interesting time. I agree it is an interesting time, Your Honor, but they were abrogated by Herald and Herald is no more. But Herald, but part of Herald was not really the subject matter of Quarles. I agree that the divisibility issue was not the subject matter of Quarles, but the effect of the GVR was to remove the entire opinion, and until this Court issues another opinion in Herald, the government's position is that the cases that were out there before, meaning Constant-Uribe, they are applicable and they are still good law. The government's position is this can only be addressed by the en banc court? For Herald? The government's position is that unless the en banc court speaks, Uribe and Silva are good law? So if I understand procedure correctly, Herald is GVR and it will go back to the en banc court, and I believe, I assume that the en banc court will decide Herald at some point because they need to. In terms of this case, it doesn't need to be decided by the en banc court or wait for the en banc court to decide Herald. Here we have a number of procedural issues. Now, just to put this in context, are we bound to follow Silva and Uribe if we were going to not wait for the en banc court? Yes, I believe. Are we bound to follow these other cases knowing that the Supreme, that the whole court may have a different viewpoint as expressed in a previous opinion? Yes, I believe under the rule of orderliness, these cases are still good law and this panel is bound to follow them. But we have the prerogative to wait? Absolutely. You can also hold this case until after the en banc court decides Herald, and in that case we would ask for supplemental briefing at that point. If the court decides to decide it now before the Herald decision is used, then again, I would point out that Mr. Wallace has prior predicates for burglary under A1 that qualify for the ACCA enhancement. But there's no other one that the court didn't use or something that would help you get over the hurdle. You have to use the Texas burglary, right? Correct. Correct. Sometimes there's one in the file in the PSR and you can say, oh, that conviction also would count. This case doesn't have that. No, we've started off with, I believe it was four burglaries and an escape conviction. The first burglary the district court found could not support this because we did not have the charging documents. Escape, as we all agree, cannot qualify now under Johnson. So we are left with the three burglaries. But again, they do qualify. But I think it's also important to look at this case within the procedural posture that we're here. This is the denial of a 2255. So we are looking at a final conviction. Mr. Wallace appealed his conviction. He applied for cert. It was denied. And so his conviction is final. This is different than a case on a direct appeal where the defendant gets the benefit of any laws that, any cases that come down while he is appealing his conviction. Here this is a limited case and we look for constitutional error. What is the standard for a COA? Whether or not there is a, the defendant can show the denial of a constitutional right. And here he can't do that. Again, broadly speaking, he has three qualifying convictions. So there are no denials of a constitutional right here. In terms of the timeliness of all of these cases, I think this court needs to look at their jurisdiction under the COA to figure out if they have jurisdiction here to decide this case. His sentence, in terms of his Johnson claim, the court denied his petition for cert in March of 2015. Johnson came out shortly thereafter and we agree that the defendant did file a timely 2255 based on Johnson. And he claimed in his 2255 that it rendered all of his prior convictions void to support the ACCA enhancement. That was timely. But what we have to look at here is what actually happened procedurally. The defendant had one appeal and that was reversed and it came back down because there was a Rule 11 issue. The second appeal, then he was resentenced again. And at that point, the district court looked at all of the prior convictions. And as I mentioned before, there were four burglaries and there was one escape conviction. The district court looked at all five of them. And he decided that the three burglaries qualified and one of the escape convictions qualified as well. It went up on appeal. This court affirmed the application of the ACCA enhancement. The defendant had conceded the escape conviction at that point, so the court accepted that and determined that they did support the ACCA enhancement as well. When he filed his 2255, he alleged that the burglaries did not count and the escape conviction did not count. So the district court looked at it again. And the district court said, well, the Fifth Circuit has decided that two of these burglary convictions count and so does the escape conviction. The escape conviction is out because of Johnson. But we have those two burglary convictions. Then it looked again at what it had decided before and said, oh, the third conviction also counts as well. Now, the defendant had filed a late letter mentioning Mathis. Now, that letter actually did not amend the 2255 claim. The 2255 claim was based on Johnson and the residual clause. The letter citing Mathis now challenged it under the enumerated clause. These are two distinct claims. It doesn't relate back. It doesn't amend it. It wasn't properly before the court. It wasn't timely under F-1 and it wasn't timely under F-3. The district court, however, looked at Mathis and said, this doesn't apply. You still have the three convictions for the burglary. And under that point, we had Mathis. And by the time the district court decided to have the 2255, we had a rebate as well. So I think that further shows that even if Mathis applied, even if it was timely, we had a rebate, which said this statute is still divisible and under A-1 you have a qualifying prior predicate. Have you ever argued about timeliness earlier in this proceeding in any of its forums? No. And I will say that this case has been around for a long time. And I will also note, though, that at the time when the 2255 was filed, the defendant only raised Johnson. None of these other claims were raised. It was a letter that came a few months afterwards that raised Mathis. And at that point, the district court decided this case without a hearing, without, he looked at the papers and said, I've already decided this. You have three prior predicates. The ACCA enhancement was proper. But before that happened, you didn't say, oh, you need to strike this. This is untimely. You didn't rush in and file something whenever he filed his amendment. The government didn't do anything. Correct. There was a letter sent by the defendant to the district court that cited Mathis. And I believe there was no response from the government at that point. So the government did nothing in the district court, allowed the district court to rule on the merits, never argued timeliness. It's true. The United States liked the ruling and so was not going to say anything. Well, I think there's two points there. One, I believe timeliness is always an issue that we can raise because it goes to jurisdiction. The Mathis claim was untimely in terms of the F-1, the 2255 F-1. Everything needs to be filed within the one year. If you're looking at F-3, then it needs to be a new constitutional right that broadens the amount of time. And as we know later from In re Lot and I believe in Weiss, this was not a new constitutional rule that was made retroactively applicable. So at that point, I understand, Your Honor, we did not file an objection. We did not move to strike it. Having said that, because it goes to timeliness, which ultimately leads to jurisdiction, I think it's an argument that can be raised at any point. But again, even if- Would there be a circuit split if we ruled in your favor? On which point? Has another circuit already held that something like this would relate back appropriately? So is there a circuit that goes the other way so you can say, well, there's already a circuit split? Or are you asking us to create a circuit split in this timeliness issue? I am not asking you to create a circuit split, and I don't believe you have to create a circuit split to rule on this. Because even if you find that the government has waived this timeliness argument, first I would say that these are fact specific. It depends on what the defendant actually raises in the 2255 and what happens in any subsequent amendment, letter, or anything else that is filed. Having said that, even if this Court looks and finds that the Mathis claim was timely raised, it still makes no difference at this point for the defendant. Again, after Mathis, this Court affirmed in a rebate that the statute was still divisible and that a conviction under A-1 qualified as a violent felony. Well, actually, that was a sentencing enhancement, but still qualified as a predicate. And so even if the district court properly considered the Mathis claim and looked at it, he came to the right conclusion because, again, at the time he was sentenced, at the time the 2255 was denied, and as we stand here today, the defendant has three prior qualifying predicates. The only way he can get around that is by asking this Court to wait for the en bas decision and herald. But even then, I believe there's procedural bars that would keep the result from coming out in his favor. Having said that, if this Court chooses to do that, we would, of course, appreciate the opportunity to brief it fully at that point. What else would you say? Why do you all need to brief anymore? The issue is whether it's divisible and whether there's intent, and that will come out in the case, won't it? I mean, is there some nuance to this case? Well, I think there is because it is a 2255, and as I said in my supplemental letter, there's a number of procedural bars that go through in terms of the timeliness of what claims this Court can consider made by the defendant and when he made them. As to the underlying issue of whether or not Texas burglary is divisible, and if A-3 qualifies, I agree that I would assume that the en bas decision and herald will address all of that. So I guess it's more of a procedural issue in terms of how it . . . What about the other cases? I'm sorry? The government is aware of other cases with this problem, with this herald lingering, whether we should go back to Arrive and Silva, and whether we shouldn't or whether we should wait. What's happening in the other cases where this is a problem? So I will say that I think this is unique in that it's in the context of an appeal from a 2255. So you have a number of statutory . . . you're dealing with a final conviction, and you have a number of statutory and timeliness issues here that are unique to this case. Speaking more broadly in terms of herald, I believe that briefing has resumed in a number of cases. I don't know if anything's been filed. I believe the government's position is currently the cases Silva, Constant, Arrive, all of those are still good law. Are you doing that, or are you saying wait? If the court orders briefing, we're . . . It's a joint motion to wait here. So is the first thing wait, but if you don't . . . but if the court orders briefing, you argue Constant, Silva, Arrive? Yes. And that's happened in other cases? We're not talking theoretically? No, I'm not talking theoretically. I believe in some of the cases there has been motions to wait in cases for herald. I believe the assumption is that herald will come out and decide these issues, so why brief it in a number of panel cases? So has those been granted? As far as I know, I think there are still some cases that are stayed. Now it could have been pending the GVR in herald. I know that some panels have ordered briefing. They were percolating up, but this one wasn't stayed? Correct. So it depends on the procedural posture and where they are. I believe that in herald there is a push to resume briefing to get this decided. We all understand that this is important for a number of cases and a decision would be helpful for us all. Unless there are any other questions, I'll rely on our briefing. Thank you, Counsel. Thank you. Your Honor, first to address the question that you asked about the sentence, Mr. Wallace went into custody in August of 2012, so if he's resentenced within the appropriate guideline range, then he has already served more time under the guidelines than he would be required to serve, but I recognize he has not reached the statutory maximum of 120 months yet. He's still a year or two away from that, which is why I didn't ask to expedite this case, and I realize there are other considerations the district court can take into account. So he could end up serving his full sentence where this actually is mooted out before there's a decision in this. I mean, if we were to wait. Well, he won't have served the full sentence of 160 months, right? That's what he's serving now is 160 months, so he still will get a big benefit if this court decides this case. Yes. On the timeliness issue, I do want to say that the government isn't even applying the case that it cites, Mail v. Felix. The government says that a Mathis legal claim is different from a Johnson legal claim, but Mail v. Felix was all about facts. It was is there a common core of fact, not is there a different legal theory involved, and that's why I cited to this court the Trent case out of the Tenth Circuit because they made that exact point that the issue is not what legal theory is being used, but rather is there a common core of facts so you can supplement with a new case, but you can't change the facts and start talking about factually distinct issues. So the government's denying even its own cases that it cites, but more importantly, timeliness is not a jurisdictional issue and it can't be raised at any time. That's the importance of that Supreme Court case in Wood v. Milliard from 2012. That's exactly what the Supreme Court said. It said that it is an issue that can be forfeited or waived by the government. It said that the court should not, an appellate court should not address a waived timeliness argument, and it can, has the discretion to, address a forfeited timeliness argument, but only in exceptional circumstances, and when the court, among those circumstances, the district court hasn't expended substantial time or resources to actually decide the substance of the case. And there isn't some kind of exception in COA because it's jurisdictional in some way? I mean, there's not some concern there? No, Your Honor, because it's not jurisdictional. It's not like the 2255H requirements for second or successive which are jurisdictional in that sense, and so that's why it is very important that this is his first. Not the second. Exactly. It's not. It's not within that. The court also asked about a constitutional right, or the government mentioned what constitutional right we're proceeding on here, and that constitutional right comes directly out of 2255A, which says that this type of petition can be brought if the person has been sentenced in contravention of law to a maximum, to a sentence in excess of the statutory maximum, in essence. And the Fourth Circuit and other circuits, as we laid out in the opening brief, have all held that a sentence in excess of that, permitted by the statute, is a violation of due process. That's the constitutional right that we're asserting. Not any constitutional right coming out necessarily of Johnson. Finally, with regard to other cases, there are other cases that have herald issues pending. I'm dealing with one in the district court now, actually in the magistrate's court, with exactly this type of 2255 petition pending, and it's dependent on the outcome of herald. We did file a motion asking the court to hold this decision for the en banc court to make its decision in herald, and I do believe that is important because those parties have addressed the substance of the issue in herald many times before, and we'll be addressing it again in much more extensive briefing than what we've done here in the week, which followed just very rapidly on the issuance of quarrels and on the remand from the Supreme Court. So, if no other questions, Your Honor? Thank you, counsel. We have no argument. Thank you to both of you. Thank you.